ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- | ) |
| | ) |
| SupplyCore, Inc. | ) ASBCA No. 58676 |
| | ) |
| Under Contract No. W52P1J-09-C-0006 | ) |

APPEARANCES FOR THE APPELLANT:    William E. Hughes III, Esq.
Emily A. Constantine, Esq.
  Whyte Hirschboeck Dudek S.C.
  Milwaukee, WI

APPEARANCES FOR THE GOVERNMENT:    Raymond M. Saunders, Esq.
  Army Chief Trial Attorney
  CPT Harry M. Parent III, JA
  Trial Attorney

OPINION BY ADMINISTRATIVE JUDGE WILSON
ON THE GOVERNMENT'S AMENDED MOTION FOR SUMMARY JUDGMENT

The government declined to exercise the fourth option of the captioned contract for warehousing services in Kuwait. Appellant, SupplyCore, Inc. (SupplyCore), maintains that it was required under Kuwaiti labor law to provide its employees 90-days notice of termination, and seeks an additional $145,634.80 representing pay to its employees for 39 days because the government did not notify it that the government would not exercise the fourth option until 51 days prior to the expiration of the contract. We have jurisdiction pursuant to the Contract Disputes Act of 1978, 41 U.S.C. §§ 7101-7109. The government moves for summary judgment. SupplyCore opposes the motion. For the reasons stated below, the motion is granted.

STATEMENT OF FACTS FOR THE PURPOSES OF THE MOTION

1. On 24 November 2008, the United States Army Contracting Command Rock Island Contracting Center (hereinafter referred to as Army or government) awarded Contract No. W52P1J-09-C-0006 to SupplyCore. Under the contract, SupplyCore was to provide warehouse services at the Interceptor Body Armor Warehouse at Camp Ali Al Salem, Kuwait. The contract was awarded as a firm fixed-price commercial items contract and incorporated FAR 52.212-4, CONTRACT TERMS AND CONDITIONS – COMMERCIAL ITEMS (OCT 2008). (R4, tab 2 at 1, 3, 10)

2. The contract was awarded for a one-year base period and contained four one-year options. The contract included FAR 52.217-9, OPTION TO EXTEND THE TERM OF THE CONTRACT (MAR 2000), which stated, in pertinent part:

(a) The Government may extend the term of this contract by written notice to the Contractor within 30 days; provided that the Government gives the Contractor a preliminary written notice of its intent to extend at least 60 days before the contract expires. The preliminary notice does not commit the Government to an extension.

(R4, tab 2 at 3, 14)

3. The contract also incorporated DFARS 252.222-7002, COMPLIANCE WITH LOCAL LABOR LAWS (OVERSEAS) (JUN 1997), which provided:

(a) The Contractor shall comply with all—

(1) Local laws, regulations, and labor union agreements governing work hours; and

(2) Labor regulations including collective bargaining agreements, workers' compensation, working conditions, fringe benefits, and labor standards or labor contract matters.

(b) The Contractor indemnifies and holds harmless the United States Government from all claims arising out of the requirements of this clause. This indemnity includes the Contractor's obligation to handle and settle, without cost to the United States Government, any claims or litigation concerning allegations that the Contractor or the United States Government, or both, have not fully complied with local labor laws or regulations relating to the performance of work required by this contract.

(c) Notwithstanding paragraph (b) of this clause, consistent with paragraphs 31.205-15(a) and 31.205-47(d) of the Federal Acquisition Regulation, the Contractor will be reimbursed for the costs of all fines, penalties, and reasonable litigation expenses incurred as a result of compliance with specific contract terms and conditions or written instructions from the Contracting Officer.

(R4, tab 2 at 10)

4. The government exercised the first three options, extending the term of the contract through 23 November 2012 (R4, tabs 8, 10, 13).

2

5. SupplyCore alleges that, at the time the contract was executed, Kuwaiti labor law required an employer to provide 15 days advanced notice of termination to its employees (compl. ¶ 4). On 21 February 2010, Kuwait enacted "The Law of Labor in the Private Sector," No. 6 of 2010. Article 44 of that law provided, in pertinent part:

> In the event where the term of the work contract is not specified, both parties shall have the right to terminate the same by means of a notice to the other party as follows:
>
> a- Three months prior to the termination of the contract for workers earning a monthly remuneration.
>
> b- One month prior to the termination of the contract for other workers. In the event where the party wishing to terminate the contract does not abide by the period of notice, he shall be obliged to pay the other party a compensation for the notification period equal to the remuneration of the worker for the same period.

(Gov't am. mot., ex. 2 at KFLD-48)

6. In a 10 September 2012 email to SupplyCore, an Army contract specialist stated, "hopefully we will get the funding and approval for OY4 [option year 4] with plenty of time to get it exercised without last minute jumping" (app. opp'n, ex. 8).

7. The record includes a 19 September 2012 email from the same contract specialist to an Army captain discussing the contract with SupplyCore. That email stated, in pertinent part:

> The contract allows the Government to extend the term of the contract by written notice to the Contractor within 30 days; provided that the Government gives the Contractor a preliminary written notice of its intent to extend at least 60 days before the contract expires. This preliminary notice does not commit the Government to an extension.
>
> Basically what this means is that we need to provide [SupplyCore] with a letter of intent to exercise the option prior to 24 Sep 12 if we plan to exercise the option within 30 days. I'm sure [SupplyCore] would still accept the option if it was within 30 days but they may have additional costs associated. Lack of receipt of a 60 day notice is

3

SupplyCore's authorization to begin demobilizing on
24 Oct 12. They are still responsible for the final month of
service but they can begin terminating housing leases, vehicle
leases, notifying employees that their contract will be ending,
etc. Once they do this then the Government would be
responsible for any related charges should we wish to
exercise the option within that 30 day window.

(App. opp'n, ex. 2)

8. By letter dated 25 September 2012, the government notified SupplyCore of its intent to exercise the fourth option period from 24 November 2012 to 23 November 2013. The notice further stated: "This preliminary notice does not commit the Government to an extension. If the Government exercises the option, a fully executed modification will be provided to you prior to the contract[']s expiration date of 23 November 2012." (R4, tab 16 at 2)

9. On 27 September 2012, a General Officer Steering Committee (GOSC) met to discuss, *inter alia*, whether to extend SupplyCore's contract (app. opp'n, Jameson dep. at 17-18). The decision made at that meeting was memorialized in a 1 October 2012 memorandum, which stated in pertinent part:

> 2. The contract GOSC was presented a decision brief
> regarding the IBA warehouse at the Ali As [sic] Salem LSA
> in Kuwait on 27 September 2012 in order to determine the
> future of the current requirement.
>
>     ....
>
> 5. Based on current use, which is less than 1500 customers
> per month, the elimination of R&R leave for units with a
> 270 day boots on ground (BOG), and an uncertainty
> regarding throughput at the gateway over the next 12 months,
> the members of the GOSC concurred on the decision to not
> renew the option year and operate the warehouse with
> Soldiers.

(R4, tab 17 at 3)

10. By email on 4 October 2012, the government provided SupplyCore a copy of a 3 October 2012 letter from the contracting officer notifying SupplyCore that the government would not be exercising the contract's fourth option (R4, tab 18).

4

11. Following receipt of the contracting officer's letter stating that the fourth option would not be exercised, SupplyCore provided notice of termination to its Kuwaiti employees on 9 October 2012 (compl. ¶ 15).

12. SupplyCore submitted a 15 November 2012 "Equitable Adjustment Request" seeking payment of $145,634.80 on the basis that Kuwaiti labor law required 90 days notice of termination to employees and that the difference between the government's 3 October 2012 notice of its intent not to exercise the fourth option "and the notice required by Kuwait law (90 days) subject[ed] SupplyCore to 39 days of renumeration [sic] (also know[n] in this case severance) pay" (R4, tab 19 at 1, 7, 8). The contracting officer denied SupplyCore's request by letter dated 14 January 2013 (R4, tab 20).

13. SupplyCore submitted an 11 April 2013 certified claim to the contracting officer seeking $145,634.80 representing an "additional 39 days of compensation to the terminated employees" due to "the Government's failure to provide adequate notice of termination of the Contract." In its claim, SupplyCore asserted that following the change in Kuwaiti law regarding notice of termination to employees, "compliance with Kuwaiti law was rendered impossible *unless* the Government provided SupplyCore at least 90 days[] advanced notice of its intent to not exercise its option for an extension of the Contract." SupplyCore alleged that it refrained from providing notice of termination to its workers in reliance on the government's communications indicating that it intended to exercise the fourth option. SupplyCore therefore maintained that the government was "responsible for lack of 90 days notice to [SupplyCore's] workers." (R4, tab 21 at 6)

14. The contracting officer denied SupplyCore's claim by final decision dated 28 May 2013 (R4, tab 23).

15. SupplyCore timely appealed by notice of appeal dated 31 May 2013, which the Board docketed as ASBCA No. 58676. SupplyCore filed a complaint on 6 August 2013 asserting four grounds for relief: Count I-breach of contract for non-compliance with DFARS 252.222-7002(c), Compliance with Local Labor Laws (Overseas), which provides for contract reimbursement of costs for compliance with local labor laws; Count II-breach of contract for failing to disclose superior knowledge; Count III-constructive change to the contract; and Count IV-breach of implied-in-fact contract of good faith and fair dealing (compl. at 4-6).

16. In lieu of filing an answer, on 21 August 2013 the government filed a motion for summary judgment. By order dated 9 December 2014, the Board deferred ruling on the motion to allow the parties to engage in discovery.

17. Following the conclusion of discovery, on 28 September 2015 the government filed an amended motion for summary judgment contending, *inter alia*: (1) appellant is not entitled to additional compensation under DFARS 252.222-7002(c); (2) appellant is not entitled to additional compensation based on a failure to disclose superior knowledge;

5

(3) there was no constructive change to the contract; and (4) the Army did not breach its implied duty of good faith and fair dealing (gov't br., *passim*). SupplyCore responded in opposition on 29 October 2015, contending that there are material facts in dispute regarding whether the government breached its implied duty of good faith and fair dealing by failing to inform appellant that it had determined that it no longer needed the contract (app. opp'n at 11). The opposition did not address the other three government contentions.

## DECISION

Summary judgment is properly granted only where the moving party has met its burden of proving the absence of any genuine issue of material fact and that it is entitled to judgment as a matter of law. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987). A material fact is one which may affect the outcome of the decision. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All significant doubt over factual issues must be resolved in favor of the non-moving party. *Mingus* at 1390 (citing *United States v. Diebold, Inc.*, 369 U.S. 654 (1962)); *SRI International v. Matsushita Electric Corp.*, 775 F.2d 1107, 1116 (Fed. Cir. 1985).

The government seeks summary judgment on all four theories of recovery raised in SupplyCore's complaint. In its opposition, SupplyCore does not address the government's arguments regarding DFARS 252.222-7002(c), the superior knowledge doctrine, or constructive changes (SOF ¶ 17). Accordingly, we consider SupplyCore to have abandoned these issues. *See States Roofing Corp.*, ASBCA No. 54860 *et al.*, 10-1 BCA ¶ 34,356 at 169,664 (failure to address release of claims contention in its post-hearing brief equated to abandonment of the issue); *Beyley Constr. Grp. Corp.*, ASBCA No. 55692, 08-2 BCA ¶ 33,999 at 168,135 (brief failed to address any issues raised previously for which appellant claimed entitlement, thus the claim for performance cost deemed abandoned). Accordingly, we grant the government summary judgment on Count I (Breach of Contract—DFARS § 252.222-7002(c)), Count II (Breach of Contract—Doctrine of Superior Knowledge), and Count III (Constructive Change).

In Count IV of its complaint, SupplyCore argues that the government breached its duty of good faith and fair dealing. Implied in every contract is a duty of good faith and fair dealing in its performance and enforcement. *Lakeshore Eng'g Servs., Inc. v. United States*, 748 F.3d 1341, 1349 (Fed. Cir. 2014); *Metcalf Constr. Co. v. United States*, 742 F.3d 984, 990 (Fed. Cir. 2014). The duty of good faith and fair dealing applies to the government as it does to private parties. *Centex Corp. v. United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005). A showing of bad faith is not required to demonstrate a breach of the duty. *SIA Constr., Inc.*, ASBCA No. 57693, 14-1 BCA ¶ 35,762 at 174,986. The duty of good faith and fair dealing requires a party to refrain from interfering with the other party's performance and from acting to destroy the reasonable expectations of the other party regarding the fruits of the contract. *Bell/Heery v. United States*, 739 F.3d 1324, 1334-35 (Fed. Cir. 2014); *Centex*, 395 F.3d at 1304. What the duty entails is "keyed to the

6

obligations and opportunities established in the contract," *Lakeshore*, 748 F.3d at 1349, and depends on what the contract promises or disclaims, *Bell/Heery*, 739 F.3d at 1335. *See also Metcalf*, 742 F.3d at 991-92 (explaining the need to consider the contract's allocation of risks and benefits in considering a claim of breach of the duty of good faith and fair dealing). The implied duty of good faith and fair dealing cannot create duties inconsistent with the express provisions of the contract. *Bell/Heery*, 739 F.3d at 1335.

SupplyCore does not contend that the government was required to exercise the fourth option period or that the failure to exercise the option was arbitrary, capricious, an abuse of discretion, or done in bad faith. Rather, this contention turns on notice. SupplyCore argues that the government "breached its implied duty of good faith and fair dealing by failing to inform SupplyCore that it had determined that it no longer needed the Contract, despite having knowledge that its failure to timely provide that information to SupplyCore would result in significant costs to SupplyCore" (app. opp'n at 11). Appellant maintains that "not only did the Government fail to notify SupplyCore that it had decided it no longer needed the Contract, it actually informed SupplyCore that it intended to exercise the option to extend the Contract" (*id.* at 12). SupplyCore asserts that the government was "aware that SupplyCore could not begin the demobilization process—including laying off its Kuwaiti workforce—until at least 60 days[] prior to termination of the Contract" (*id.*). SupplyCore suggests that the "unfairness of the Government's actions" is underscored because the contract was a "fixed-price contract for which SupplyCore bore the risk of expense" (*id.* at 13).

SupplyCore's opposition to the government's amended motion is, at best, confusing. The most liberal reading of SupplyCore's argument is that the government breached the duty of good faith and fair dealing by failing to provide SupplyCore *any* notice that the fourth option would not be exercised. The problem with the argument so framed is that the government did provide notice to SupplyCore that it would not be exercising the fourth option (SOF ¶ 10), and SupplyCore does not dispute that it "received notice that the final option year would not be renewed on October 4, 2012" (app. opp'n at 5). We decline to read SupplyCore's opposition in such a self-defeating manner. We instead interpret SupplyCore's opposition as arguing, consistent with its 11 April 2013 certified claim, that the implied duty of good faith and fair dealing required the government to provide *earlier* notice that the fourth option would not be exercised. Nonetheless, we reject SupplyCore's argument.

The presence of an option in a contract does not create a legal obligation upon the government to exercise the option. *Mid-Eastern Industries, Inc.*, ASBCA No. 53015, 01-2 BCA ¶ 31,471 at 155,383; *Def. Sys. Co.*, ASBCA No. 50918, 00-2 BCA ¶ 30,991 at 153,006. The exercise of an option is generally within the broad discretion of the government. *IMS Engineers-Architects, P.C.*, ASBCA No. 53471, 06-1 BCA ¶ 33,231 at 164,674, *recon. denied*, 07-1 BCA ¶ 33,467, *aff'd, IMS Engineers-Architects, P.C. v. Geren*, 274 F. App'x 898 (Fed. Cir. 2008); *Plum Run, Inc.*, ASBCA No. 46091 *et al.*, 97-2 BCA ¶ 29,193 at 145,230. The option clause in SupplyCore's contract stated that

7

the government "may extend the term of this contract" (SOF ¶ 2), providing the government such broad discretion here. *See Northeast Air Group, Inc.*, ASBCA No. 46350, 95-2 BCA ¶ 27,679 at 138,004-05. In light of the government's broad discretion in determining whether to exercise an option and the lack of an obligation to do so, SupplyCore could only have reasonably assumed that the contract would expire on 23 November 2012. Nor could SupplyCore have reasonably relied on the government's communications indicating that it would exercise the fourth option. While the contract conditioned the exercise of an option upon providing preliminary written notice of the government's intent to extend at least 60 days prior to the expiration of the contract, the option clause specifically stated that such notice would not commit the government to actually extend the term of the contract (SOF ¶ 2). Because the government had not yet exercised the fourth option, any expectation SupplyCore may have had that the contract would continue beyond the 23 November 2012 expiration date was patently unreasonable.

SupplyCore seeks to shift responsibility onto the government, contending that the government knew that its failure to provide timely notice that the fourth option would not be exercised "would result in significant costs to SupplyCore" (app. opp'n at 11). SupplyCore cites the contract specialist's 19 September 2012 email for the proposition that under the contract, "SupplyCore was not authorized to begin the demobilization process, including laying off its workers, until 60 days[] prior to termination of the Contract term" (app. opp'n at 9). For the purposes of summary judgment, we accept SupplyCore's characterization of the 19 September 2012 email. That email alone, however, is insufficient to establish that SupplyCore was prohibited from providing timely notice of termination to its employees. SupplyCore cites no provision of the contract that precluded SupplyCore from giving the required notice to its employees under Kuwaiti law until the government notified it that the contract would not be extended. DFARS 252.222-7002(b), on the other hand, placed the risk of compliance with Kuwaiti law squarely on SupplyCore. Furthermore, because the contract was firm fixed-price, SupplyCore also bore the risk that the cost of such compliance would increase. *Lakeshore*, 748 F.3d at 1347 ("The essence of a firm fixed-price contract is that the contractor, not the government, assumes the risk of unexpected costs."); *Raytheon Missile Sys. Co.*, ASBCA No. 57594, 13 BCA ¶ 35,264 at 173,117 ("[T]he risk allocated to contractors by fixed-price-contracts of unexpected increases in the costs of material and labor is very broad indeed."). The contract specialist's 19 September 2012 email, therefore, does not raise a material factual issue that would bar summary judgment.

Based upon the foregoing, the government did not breach its duty of good faith and fair dealing.

8

## CONCLUSION

The government's amended motion for summary judgment is granted. The appeal is denied.

Dated: 17 February 2016

OWEN C. WILSON
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 58676, Appeal of SupplyCore, Inc., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

9